AO91 (Rev.5/85) Criminal Complaint
=========================================================================

# UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

**FILED**
DEC 0 7 2005
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

UNITED STATES OF AMERICA

V.

MICHAEL SARGENT

CRIMINAL COMPLAINT

CASE NUMBER: A05-224 MJ (JDR)

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From on or about January 27, 2005, through on or about the present, in the District of Alaska, defendant MICHAEL SARGENT did knowingly steal, purloin, and without authority convey and dispose of any record, voucher, and thing of value of the United States or of any department or agency thereof; all of which is in violation of <u>Title 18, United States Code, Section(s) 641 - Theft of Public Property or Records</u>.

I further state that I am a <u>Special Agent</u> of the <u>United States Postal Service, OIG</u>, and that this complaint is based on the following facts:

See attached affidavit, incorporated by this reference, as if fully restated herein.

Continued on the attached sheet and made a part hereof:    X Yes    ___ No

_____
SA Brady C. Ipock

Sworn to before me and subscribed in my presence,

December 6, 2005                         at   Anchorage, Alaska
Date                                          City and State


John D. Roberts                              _____
United States Magistrate Judge               Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR CRIMINAL COMPLAINT

I, Brady C. Ipock ("I"), being duly sworn, depose and state as follows:

### I. INTRODUCTION

1.  I am a Special Agent assigned to the United States Postal Service ("USPS"), Office of Inspector General ("OIG"), Federal Way, Washington, and have been so employed since June 2005. I am responsible for investigating criminal, civil, and administrative matters that fall within the jurisdiction of the USPS. As such, it is part of my duties to investigate allegations of criminal misconduct by USPS employees. From August 2003 until June 2005, I was a Special Agent for the Department of Transportation OIG, where I was responsible for conducting criminal and civil investigations that fell within the jurisdiction of the department. From January 1996 until August 2003, I was a Special Agent for the United States Air Force Office of Special Investigations, where I was trained in the conduct of criminal investigations and had experience investigating a wide range of Title 18 violations.

2.  This affidavit sets forth probable cause to believe Michael D. Sargent, social security number 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, violated Title 18, United States Code, Sections 641. That belief is based on my investigation including witness interviews, recovered postal documents, and information I have received from the United States Postal Inspection Service and USPS management.

Affidavit of SA Brady Ipock<br>
A05-224MJ (JDR)

## II. LEGAL BACKGROUND

3. Title 18, United States Code, Section 641 (Public money, property or records) states: Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof - Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

## III. SUMMARY OF INVESTIGATION

4. The Business Mail Entry Unit ("BMEU") is the office within the USPS that processes large mailings from business customers. The business customer brings in the mailing along with a "postage statement" describing the quantity of mail and the customer's estimate of the postage due. There are several types of postage statements depending on the items being mailed. The bulk mail technician receives the mailing and postage statement, and verifies the quantity of mail. The bulk mail technician annotates the postage statement with the verification information, and enters the number of pieces mailed and postage due into the customer's PostalOne account. This process deducts postage from the customer's

account and generates a PS Form 3607, which acts as proof the mailing was entered into PostalOne and postage was paid. The PS Form 3607 and postage statement are later verified with each other for accuracy and accountability purposes.

5.   On April 7, 2005, Postal Inspector Matthew Hoffman, United States Postal Inspection Service, Anchorage, received a phone call from Beverly Christie, manager, Anchorage BMEU. Christie suspected one of her employees, Michael Sargent, was mishandling business mail. Christie explained she and other BMEU employees documented 20 business mailings, representing approximately $12,000 worth of postage, that were cleared from the BMEU without being entered into the PostalOne system, the computer system from which postage is deducted from business mailers' accounts. Additionally, Christie said the postage statements related to the mailings were missing.

6.   Christie explained BMEU employees learned of the "bypassed mailings" (meaning the mailings that were not entered into the PostalOne system) through several avenues: 1) business mail customers called the BMEU to ask why postage had not been deducted from their PostalOne account after they dropped off a mailing; 2) morning BMEU employees discovered mail on the BMEU dock that was labeled "Cleared" the previous night, but not entered into PostalOne; and 3) BMEU employees noted some business mail customers that typically carried a zero balance had significant funds in their PostalOne accounts.

7.   BMEU Supervisor Art Golez and Business Mail Entry Analyst Uni Han-Norton

continued to monitor the BMEU for additional bypassed mailings and provide information to Postal Inspector Hoffman and me. Between January and November 2005, BMEU employees identified 84 bypassed mailings, representing approximately $106,714.18 in postage, which they attributed to Sargent's actions. BMEU employees were able to recapture this lost revenue by contacting the customers directly, obtaining copies of the customers' postage statements, and then deducting the proper amount from the customers' PostalOne accounts.

8. Golez explained Sargent had been working in the BMEU since June 1989 and was very familiar with proper BMEU procedures. Despite that, Golez conducted a BMEU procedural review with several BMEU employees, including Sargent, on July 15, 2005. The procedural review reiterated the BMEU procedures for accepting, verifying, and clearing business mail, including collecting proper postage.

9. Between October 20, 2005, and November 25, 2005, Sargent was videotaped at the BMEU on 18 different work days. Postal Inspector Hoffman reviewed the videotapes and made the following observations:

| Observations | Number of Days |
| --- | --- |
| Sargent observed working at the BMEU | 18 |
| Sargent observed placing what appear to be BMEU-related documents into his personal briefcase | 13 |
| Sargent observed leaving the BMEU with his personal briefcase containing BMEU-related documents | 12 |
| Videotape ends before Sargent leaves BMEU | 5 |
| Sargent not observed removing any documents from BMEU | 1 |

Affidavit of SA Brady Ipock
A05-224MJ (JDR)

10. On November 3, 2005, Postal Inspector Hoffman and I interviewed Uni Han-Norton. Han-Norton explained she used to be close friends with Sargent. Han-Norton and Sargent both applied for the Business Mail Entry Analyst position, but Han-Norton was promoted to the position in December 2004 instead of Sargent. Sargent became angry when he was not promoted and even took five weeks of vacation time to deal with his anger according to Han-Norton.

11. Han-Norton said the inquiry into whether Sargent was deducting the proper postage from customers' accounts began around September 2004 when the USPS received calls from customers claiming they had too much money in their accounts. Han-Norton would then ask the customers for copies of their postage statements and find Sargent had not entered the mailings into PostalOne and the USPS did not have the original copies of the postage statements. Consequently, the customers' accounts were not being charged for the mailings and the USPS had no way of knowing this since the postage statements were missing.

12. Sargent used to joke that his best friend was "TC," which stood for trash can. Han-Norton and others in her office searched through the trash cans to see if Sargent was throwing the postage statements away, but they did not find any. Han-Norton said Sargent has told her in the past that he would like to see the USPS "go bankrupt," and she thinks Sargent not charging customers for mailings is "the best way for him to get back at the Post Office."

Affidavit of SA Brady Ipock
A05-224MJ (JDR)

13. Han-Norton said Sargent bought and sold guns in his personal business called Arctic Specialty Enterprises (ASE). Han-Norton explained ASE customers would call Sargent and come by the BMEU in the evening to conduct ASE business. Han-Norton used to joke with Sargent that the BMEU sign rotated and the other side read ASE in the evenings. Han-Norton warned Sargent that he could be fired for doing ASE business at work. Han-Norton told Inspector Hoffman that on several occasions, Sargent had empty shell casings in his pant's pockets, and would occasionally show them to co-workers and customers. Han-Norton said that a couple of times, when she or other co-workers mentioned to Sargent that he could be fired for making mistakes, he would allegedly pull out empty casings and say something like "Well, then this one's for you, this one's for you, this one's for you..." and point different empty casings at different people. Sargent also told Han-Norton she should take vacation if he was ever fired.

14. On November 4, 2005, I collected Sargent's trash from the end of his driveway located at 1320 Heidi Circle, Anchorage, AK. I searched through the trash bag and found three manila "inter-office" envelopes containing original, completed postage statements, completed weighing and dispatch certificates, and other related USPS documents. More of these same documents were found loose throughout the trash bag. The documents represented 59 mailings, primarily between October 28, 2005 and November 2, 2005, valued at $45,512.

15. On November 8, 2005, Postal Inspector Hoffman compared the documents found in Sargent's trash with PostalOne records. The comparison revealed 34 of the 59 mailings, valued at $39,266 in postage, were not entered into PostalOne, which means postage was not collected on those 34 mailings.

16. On November 11, 2005, Postal Inspector Hoffman coordinated with Alaska Waste to obtain three trash bags collected from Michael Sargent's home that day. Postal Inspector Hoffman discovered 16 postage statements, one PS Form 3607, and numerous other original BMEU documents in the trash. These documents represented 16 different mailings from November 8-10, 2005. Postal Inspector Hoffman again compared the documents found in Sargent's trash with PostalOne records. The comparison revealed nine of the mailings, representing $1,932.40 in postage, were entered into PostalOne. The remaining seven mailings, representing $5,643.13, were not entered into PostalOne, which means postage was not collected on those seven mailings.

17. Postal Inspector Hoffman also found a spreadsheet in Sargent's trash that had USPS mailers' names, permit numbers, mail class, pieces, and revenue listed, but the spreadsheet was not a standard USPS spreadsheet or a USPS form. Additionally, the spreadsheet was apparently printed on an inkjet printer, determined by the pixelized print, as opposed to the laser printers used in the BMEU. On December 2, 2005, Postal Inspector Hoffman found a Brother brand inkjet printer cartridge in Sargent's trash.

18. Postal Inspector Hoffman and I compared Sargent's spreadsheet to the bypassed mailings identified by BMEU employees and the postage statements we recovered from Sargent's trash. Based on this comparison, it appeared as though the spreadsheet was a list, maintained by Sargent, of the mailings he did not charge customers for postage or enter into the PostalOne system. Sargent's spreadsheet covered mailings between March 12, 2005 and November 9, 2005, and at the bottom of the revenue column was a running total in the amount of $436,919.12.

19. Han-Norton told me Sargent had a computer and printer at home and recalled a time in about September 2004 when some expensive computer software (approximately $800 value) arrived at the BMEU but was actually intended for Mark Daly, a postal employee in a different office. A BMEU manger was supposed to take the software up front so Daly could get it, but he forgot and left it in the BMEU. A week or so later Daly was asking for the software explaining he never received it. Sometime after that Sargent and Han-Norton were working late and the subject of the missing software came up again. Sargent told Han-Norton he took the software home and threw the box away. Han-Norton thought Sargent was joking and told him he should not say things like that because someone might think he was serious. Sargent said something to the effect of, "Who said I was joking?"

## IV. PROBABLE CAUSE

20. Based upon the totality of the facts described above, I have probable cause to believe

that Michael Sargent violated Title 18, United States Code, Section 641, by knowingly converting USPS records to his own use and disposing of them, resulting in a failure to collect the postage due to the USPS.

21. On information and belief, the conduct of Michael D. Sargent constitutes a violation of Title 18, United States Code, Section 641.

Special Agent Brady C. Ipock
United States Postal Service
Office of Inspector General

Subscribed and sworn to before me on this 6th day of December, 2005

John D. Roberts
United States Magistrate Judge

Affidavit of SA Brady Ipock
A05-224MJ (JDR)